UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x
                                :
UNITED STATES OF AMERICA,       :
                                :
            - v. -              :         07 Cr. 980 (CLB)
                                :
ANTHONY RYPKA,                  :
                                :
                                :
               Defendant.       :
                                :
- - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO THE DEFENDANT'S OMNIBUS PRETRIAL MOTION**


                              MICHAEL J. GARCIA
                              United States Attorney for the
                              Southern District of New York
                              One St. Andrew's Plaza
                              New York, New York 10007

Nicholas L. McQuaid
Assistant United States Attorney
     -Of Counsel-

## TABLE OF CONTENTS

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   The Search Warrant. . . . . . . . . . . . . . . . . 1

    B.   The Indictment . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.   RYPKA'S MOTION TO SUPPRESS PHYSICAL AND DIGITAL
       EVIDENCE SEIZED PURSUANT TO THE SEARCH WARRANT SHOULD
       BE DENIED. . . . . . . . . . . . . . . . . . . . . 4

        A.   There Was Probable Cause to Issue the Search
           Warrant . . . . . . . . . . . . . . . . . . . 5

        B.   Officers Relied Upon the Search Warrant in Good
           Faith. . . . . . . . . . . . . . . . . . . . 15

    II.  RYPKA'S MOTION TO SUPPRESS STATEMENTS MADE TO LAW
       ENFORCEMENT SHOULD BE DENIED . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . 23

## PRELIMINARY STATEMENT

The United States of America respectfully submits this memorandum of law in opposition to the omnibus pretrial motion of defendant Anthony Rypka ("Rypka Pretrial Motion" and "Rypka" respectively).

The defendant moves this Court for an order suppressing (1) all evidence seized pursuant to a search warrant authorizing the search of his residence ("Search Warrant"), and (2) the defendant's statements made to law enforcement officers.  In the alternative, the defendant moves for an order granting an evidentiary hearing on the suppression motion.  The defendants' motions are without merit and, for the reasons set forth below, should be denied in their entirety without a hearing.

## BACKGROUND

### A.    The Search Warrant

On or about September 13, County Court Judge Rory Bellantoni ("Judge Bellantoni" or "Issuing Judge"), sitting as a Judge of the Town of Tarrytown, granted a search warrant for 40 North Washington Street, Tarrytown, New York.  See Search Warrant ("Exhibit A").  On or about September 14, 2006, investigators with the New York State Police executed the search warrant at 40 North Washington Street.  See Complaint ("Exhibit C") ¶ 5.  The Search Warrant was issued based on the following facts set forth

1

in the Affidavit of Investigator Denzil Fearon of the New York State Police ("Fearon Affidavit" or the "Affidavit"). <u>See</u> Fearon Aff. ("Exhibit B") ¶ 1.

On or about June 26, 2006, the New York State Internet Crimes Against Children Task Force received a report of possession/dissemination of child pornography from the National Center for Missing and Exploited Children (NCMEC) Cyber Tip Line. <u>See</u> Fearon Aff. ¶ 3. NCMEC report number 398857 ("NCMEC Report"), contained information submitted to NCMEC from American Online ("AOL") on June 13, 2006. <u>Id.</u> AOL reported that an individual with the AOL Screen name "alertexchief" and the email address alertexchief@aol.com had emailed one image of child pornography ("June Email"). <u>Id.</u> The image in the June email was verified to be an image of a minor by NCMEC, which maintains a database of known images of child pornography. <u>Id.</u> ¶ 5.

The New York State Attorney General's Office learned that according to American Online ("AOL") records, the subscriber for "alertexchief" was:

> Anthony Rypka
> 40 North Washington Street
> Tarrytown, NY 10591
> (914) 332-9426

<u>Id.</u> The New York State Department of Motor Vehicle Records confirmed that an "Anthony Rypka" lived at 40 North Washington Street, Tarrytown NY. <u>Id.</u>

Further, according to the Affidavit, drawing on his training and experience, Inspector Fearon described characteristics of child pornography collectors relevant to determining whether there was probable cause to search 40 North Washington Street, namely that "collectors of child pornography maintain their collections over many years and do not destroy or discard their materials.  Because these materials are illegal and difficult to obtain, once a collector procures them he will likely hoard them in a safe place, typically a private home." Id. ¶ 2.

**B.   The Indictment**

Rypka was charged on a two-count criminal complaint in July 2007.  On October 23, 2007, a grand jury sitting in the Southern District of New York returned a four-count Indictment against him.  Count One charges the defendant with receiving and distributing computer files containing child pornography, in violation of Title 18, United States Code, Section 2252A(a)(2)(B); Count Two charges the defendant with knowing possession of computer files containing child pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(B); Count Three charges the defendant with possession of a fully automatic sub-machine gun, in violation of Title 18, United States Code, Section 922(o); and Count Four charges the defendant with possession of an unregistered firearm, in

violation of Title 26, United States Code, Section 5861(d).  See Indictment ("Exhibit D").

## ARGUMENT

**I.   RYPKA'S MOTION TO SUPPRESS PHYSICAL AND DIGITAL EVIDENCE SEIZED PURSUANT TO THE SEARCH WARRANT SHOULD BE DENIED**

The defendant seeks to suppress all evidence that was obtained pursuant to the Search Warrant on the grounds that there was not probable cause to support a search of his home.  See Rypka Pretrial Mot. at 11; Quinn Aff. ¶ 1.  Specifically, he argues that (1) there was no basis from which the issuing judge could conclude that it was the defendant who sent the June Email, Rypka Pretrial Mot. at 12-13; (2) that there was no basis to conclude that the June Email was sent from the defendant's residence, id. at 13-14; and (3) that there was no evidence any images sent in the June Email would be found at the defendant's residence because there was no reason to assume that he was a "collector" of child pornography, id. at 16-17.

The Government respectfully submits that the defendant's motion to suppress should be denied because Judge Bellantoni's issuance of the Search Warrant was supported by probable cause.  Additionally, if there was a defect in the

4

issuance of the warrant, which there was not, law enforcement officers plainly executed the warrant in good faith.

**A.      There Was Probable Cause to Issue the Search Warrant**

The task of a judge in issuing a warrant is to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Such a determination must be approached in a practical way, id. at 232, because "probable cause is a flexible, common-sense standard." Texas v. Brown, 460 U.S. 730, 742 (1983). The evidence presented to the judge, therefore, "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Gates, 462 U.S. at 231-32 (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)). The judge deciding whether to issue a warrant should take into account the "totality-of-the-circumstances" and his consideration should include an "assessment of probabilities in particular factual contexts." Id. at 232-33.

Two factual showings are required to establish probable cause to search a residence: (1) that a crime was committed; (2) that there is probable cause to believe that evidence of such crime is located at the residence to be searched. United States

5

v. Travisano, 724 F.2d 341, 345 (2d Cir. 1983). The evidence for each element need not be overwhelming: "it is only a probability, and not a prima facie showing of criminal activity, that is the standard for probable cause." Id. at 346.

Where, as here, an issuing judge has determined that the probable cause standard was met and has duly issued a warrant, that determination is entitled to "substantial deference" and doubtful cases should be determined by the preference given to warrants. United States v. Ventresca, 380 U.S. 102, 108 (1965); United States v. Martin, 157 F.3d 46, 52 (2d Cir. 1998). A judge's determination that probable cause existed "will be upheld on less persuasive evidence than would have justified a police officer acting on his own," and that determination "is itself a substantial factor tending to uphold the validity of the warrant." Travisano, 724 F.2d at 345.

Applying these principles to this case, Judge Bellantoni was justified in concluding that there was probable cause to search 40 North Washington Street based on the facts contained in the Fearon Affidavit. First, the facts presented in the Fearon Affidavit established beyond any doubt that a crime had been committed. The NCMEC report identified an image containing known child pornography that had been sent by email, and therefore had been distributed over the internet. Moreover, because collectors of child pornography "maintain their collections over many years and do not destroy or discard their

6

materials," Fearon Aff ¶ 2, there was good reason to believe that the image sent in the email would be stored on the computer of the person who sent it.

Second, there were several factual bases in the Fearon Affidavit from which Judge Bellantoni could conclude that there was at least a fair probability that the image attached to the June Email would be found at 40 North Washington Street. Subscriber information identified the AOL email address that sent the email as belonging to Anthony Rypka at the address 40 North Washington Street, Tarrytown, New York. Records from the New York State Department of Motor Vehicles confirmed that an Anthony Rypka lived at 40 North Washington Street. Given the pattern of behavior associated with collectors of child pornography, there was reason to conclude that the image sent from the alertexchief email account would still be maintained by the collector who had sent the email, and that the collection would be "hoard[ed] in a safe place, typically a private home." Fearon Aff. ¶ 2. Since there were reason to be confident that 40 North Washington Street was the home of the person who sent the email there was reason to be confident that there would be a copy of the image on a computer in that home.

Not only was a finding of probable cause based on the Fearon Affidavit supported by logic and common sense, it was compelled by governing Second Circuit case law. In United States v. Martin, 426 F.3d 68 (2d Cir. 2005), the Second Circuit upheld

7

a search warrant for residences of subscribers to email groups
that were used as vehicles for sharing child pornography.  The
factual bases for probable cause in <u>Martin</u> were the same as the
principal factual bases here: 1) evidence of the distribution of
child pornography through email; 2) information linking an email
address to a street address; and 3) evidence of the tendency of
child pornography collectors to hoard images.  <u>Id.</u> at 74-75
(citations omitted).  Based on those considerations, the <u>Martin</u>
Court had "no difficulty concluding that the corrected affidavit
established probable cause."[1]  <u>Id.</u> at 75.

  The factual basis supporting probable cause in this
case is, in fact, stronger than what was deemed sufficient in

---

  [1] The Second Circuit's decision in <u>Martin</u> makes the
defendant's attempt to rely on <u>United States v. Perez</u>, 247 F.
Supp. 2d 459 (S.D.N.Y. 2003), unavailing.  <u>See</u> Rypka Mot. at 15-
16.  <u>Perez</u>, which was decided two years before <u>Martin</u>, presented
essentially the same factual bases as <u>Martin</u> and reached a
different conclusion about whether there was a sufficient factual
basis for probable cause.  Even if there had not been an
intervening Second Circuit decision, the primary concern of the
district court in <u>Perez</u>, whether membership in a web group
provided an adequate basis to conclude that a crime had been
committed, is not at issue here, given that an image of child
pornography had been distributed from the defendant's email
account.  <u>See</u> <u>id.</u> at 481 ("In the end, all that is left is the
fact that <u>Perez</u> subscribed to a website where unlawful images of
child pornography could be downloaded.  I conclude that was not a
sufficient 'residue' to permit a magistrate judge to determine
that a fair probability existed that contraband or evidence of
child pornography would be found in [the defendant's] home."; <u>see</u>
<u>also</u> <u>id.</u> at 485 (Agreeing with earlier decision in a related case
that "[w]ithout any evidence that child pornography had ever been
received or that the web site had otherwise been accessed, I do
not believe that probable cause would have existed." (citation
and quotation marks omitted)).

Martin, where the only evidence linking the email addresses to any images containing child pornography was that the "e-group" facilitated sharing of images of child pornography among its members by email.  See id.  Here, there is concrete evidence that an email containing an image of child pornography was sent from the alertexchief email.  If the Second Circuit was able to conclude that there was a sufficient factual basis to support probable cause in Martin, then the stronger evidence presented in the Fearon Affidavit must also be sufficient to support a finding of probable cause.[2]

The defendant's challenges to Search Warrant are without merit.  His arguments that there is no factual basis to conclude that the June 13 email was sent by the defendant or sent from the defendant's house, Rypka Pretrial Mot. at 13-15, misapprehend the question that was presented Judge Bellantoni in deciding whether to issue a search warrant, namely whether there was probable cause that evidence of the crime at issue — distribution and possession of child pornography — would be found

---

[2] The holding in Martin was recognized as controlling in United States v. Coreas, 419 F.3d 151 (2d Cir. 2005), a related case where the e-group that the defendant joined was less focused on child pornography.  See id. at 157.  While the Coreas panel made clear that it disagreed with the outcome in Martin, see id. at 156, its disagreement focused on the extent to which evidence of a defendant's membership in an e-group that offered child pornography, could by itself provide probable cause that the defendant had actually downloaded any images.  See id.  As explained above, that issue is not presented here, as there is clearly evidence that an image containing child pornography was possessed and distributed.

at the defendant's home.  See United Stats v. Thomas, 989 F.2d
1252, 1255 (D.C. Cir. 1993) (noting that "observations of illegal
activity occurring away from the suspect's residence, can support
a finding of probable cause to issue a search warrant for the
residence, if there is a reasonable basis to infer from the
nature of the illegal activity observed that relevant evidence
will be found in the residence"); accord United States v. Hodge,
246 F.3d 301, 306-7 (3rd Cir. 2001) ("A court is entitled to draw
reasonable inferences about where evidence is likely to be kept,
based on the nature of the evidence and the type of offense.").[3]
As long as there was a sufficient basis to conclude that there
was probable cause that a search would uncover evidence of the
crime at 40 North Washington Street, the questions of who sent
the June email and from where were irrelevant.

In any event, there were factual bases from which the
Court could conclude that there was a fair probability that the

---

[3] Regardless of whether the June Email was sent from a café,
a friend's house or his basement, the Fearon Affidavit's
description of the behavior of collectors of child pornography
provided a factual basis to conclude that the sender of the June
Email would be likely to keep a copy of the attached image with a
collection of other child pornography images and that that
collection would likely be kept in that person's home.
For this reason, Rypka's suggestion that there were other
investigative steps that could have been undertaken to determine
whether the email was actually sent from his home, Rypka Pretrial
Mot. at 14, also misses the mark.  Moreover, to the extent that
information would have been probative, "whether [law enforcement]
could have provided more information is not the benchmark" when
deciding whether there was probable cause for a search.  United
States v. Shields, 458 F.3d 269, 280 (3rd Cir. 2006).

10

defendant did send the email and that it was sent from his home.
While it was theoretically <u>possible</u> that the email could have
been sent by someone other than Rypka using his account, the
probable cause inquiry focuses on probabilities, not certainties,
<u>see</u> <u>United States v. Fama</u>, 758 F.2d 834, 838 (2d Cir. 1985) ("The
fact that an innocent explanation may be consistent with the
facts as alleged . . . does not negate probable cause." ); <u>see
also</u> <u>Gates</u>, 462 U.S. at 235 (noting that "only the probability,
and not a prima facie showing, of criminal activity is the
standard of probable cause" ), and since the email was sent from
the defendant's own email account, it is certainly probable that
it was the defendant himself who sent it.[4]  <u>C.f.</u>  <u>United States
v. Florez</u>, 447 F.3d 145, 153 (2d Cir. 2006) ("The district court
did not clearly err in rejecting the argument that Florez's
disappearance from all known New York locations after that day
was merely coincidental to his brother's arrest. It reasonably
concluded from the totality of the evidence that Florez fled at
that time with the specific intent to avoid arrest and
prosecution.")

---

[4]  In arguing that "[a]nyone can email another by simply
sending a message or image to another known's email address,"
Rypka conflates receiving an email and sending an email.  It is
obviously not true that "anyone" send an email an email account
and there is no dispute that an email containing child
pornography was sent from the defendant's email account.  <u>See</u>
Fearon Aff. ¶ 3.

Moreover, if it were true that someone other than Rypka was using his email address the most likely explanation would be that it was being used by someone else in his household and that would still support a determination that there was probable cause to search 40 North Washington Street.  In any event, in order to make out probable cause, the Fearon Affidavit was not required to disprove the mere possibility that another person had used the defendant's email account, either with or without the defendant's permission, to distribute child pornography.

Finally, the defendant's contention that there is no evidence that he is a "collector" of child pornography should be rejected.  Rypka Pretrial Mot. at 16.  The sending of the June Email provided a factual basis to conclude that there was a fair probability that its sender was a collector of child pornography. The fact that the email contained a known image meant that the sender of the email possessed that image and allowed the reasonable inference that the person who sent the email would possess others.  The fact that the sender knew someone who he was comfortable to share the image with would provide a basis to infer that he had contact with others who shared an interest in child pornography.  In addition, the fact that sender took the time to send the email was evidence that the sender of the email actively shared his images with others and would lead to the inference that others had shared and would share images with the sender in turn.

12

Moreover, nothing in the Fearon Affidavit suggests that the term "collectors of child pornography" is a term of art that can only be applied to those who display a threshold level of interest in child pornography. Instead, because his comments were based on all of Inspector Fearon's "training and experience," the term child pornography collectors is most naturally read to describe all defendants involved with child pornography, whatever their degree of interest.

Indeed, other courts that have considered the issue have accepted that similar statements about the habits of child pornography "collectors" may provide a factual basis for probable cause, even where there was no concrete evidence of how many images were involved. See Martin, 426 F.3d at 75; see also United States v. Shields, 458 F.3d 269, 273, 278 (3rd Cir. 2006); c.f. United States v. Watzman, 486 F.3d 1004, 1008 (7th Cir. 2007) ("In his affidavit Agent Wolflick explained in great detail his experience with consumers of child pornography and specifically averred that these individuals tend to hoard collections at home . . . . reliance on these expert representations is not an 'assumption'; the court was entitled to rely on Agent Wolflick's expertise to conclude that there was a fair probability that child pornography would be found in Watzman's home.").

Once again, the reasoning of the Second Circuit in Martin is instructive. There, the Court found that testimony

13

about "the characteristics and proclivities of child pornography collectors" could be considered probative despite the fact that the only evidence of the collection of child pornography was a subscription to a web group whose "essential purpose was to trade child pornography." 426 F.3d at 75. The Martin Court recognized that there was no evidence that the subscriber in question had ever downloaded child pornography from the site but instead might have just visited the site and viewed images. Id. at 77. Nonetheless, it was still willing to rely on the habits of collectors of child pornographers in finding that there was probable cause: "[I]t is common sense that, in the context of this website and the corrected affidavit, those who view are likely to download and store pornography." Id. The inferential step required here — assuming that someone who has possessed and emailed an image containing child pornography has collected other images — is certainly no larger then the inferential step accepted in Martin, and is exactly the type of assessment of a factual probability that has repeatedly been countenanced in evaluating probable cause. See e.g., Gates, 462 U.S. at 231-32 ("The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same - and so are law enforcement officers.")

14

Because both a common-sense assessment of the circumstances and controlling Second Circuit case law support a finding of probable cause, the Search Warrant should be upheld and the defendant's motion to suppress the evidence seized in the search should be denied.

**B.    Officers Relied Upon the Search Warrant in Good Faith**

Even if the Court were to find that the Search Warrant was not supported by probable cause, the evidence recovered pursuant to that warrant still should not be suppressed because the officers that executed the search relied on the Search Warrant in good faith.  It is well-settled that, with certain limited exceptions not here applicable, where a search warrant is "obtained in objectively reasonable reliance on a subsequently invalidated search warrant," the Fourth Amendment exclusionary rule does not apply.  United States v. Leon, 468 U.S. 897, 922 (1984).  The Supreme Court has held that the exclusionary rule and its harsh remedy of suppression should not apply where evidence is "obtained in objectively reasonable reliance on a subsequently invalidated search warrant." Leon, 468 U.S. at 922.

"The essential rationale underlying [this] good faith exception is that the exclusionary rule 'cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity.'" United States v. Cancelmo, 64 F.3d 804, 807 (2d Cir. 1995) (quoting Leon, 468 U.S. at 919); see also

15

Arizona v. Evans, 514 U.S. 1, 10 (1995) (use of exclusionary rule is not warranted where it does not result in deterrence).  The pivotal question in a particular case is thus "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 922 n.23; see also United States v. Moore, 968 F.2d 216, 222 (2d Cir. 1992).  If the reviewing court finds that the officers' reliance on the warrant was objectively reasonable, suppression is not warranted.  See e.g., United States v. Roberts, 852 F.2d 671, 675 (2d Cir. 1988).

The only instances where the good faith exception does not apply are where: (1) the issuing judge was misled by information the affiant knew was false; (2) the issuing judge wholly abandoned his or her judicial role; (3) the supporting affidavit lacked any indicia of probable cause; or (4) the warrant was "so facially deficient, i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot possibly presume it to be valid." See Leon, 468 U.S. at 923.  Rypka has not established that any of the four situations which would preclude the application of the good faith exception in this case.  The defendant does not contend that Judge Bellantoni acted inappropriately in this case, nor does he dispute that the search warrant was in any way facially deficient.

For the reasons set forth above, Rypka has not established that the supporting affidavit did not contain any indicia of probable cause. Moreover, even if the Search Warrant is deemed defective, it was at least arguably consistent with controlling Second Circuit case law. Given the strong similarities between the factual bases for the search warrant in Martin and the factual bases for the search warrant here, it cannot be seriously contended that a reasonably well-trained officer would have known the search was illegal. The evidence seized should be admitted, at the very least, under the rule of Leon.

## II. RYPKA'S MOTION TO SUPPRESS STATEMENTS TO LAW ENFORCEMENT SHOULD BE DENIED

Rypka has also moved to suppress statement he made to law enforcement officers following the execution of the search warrant. Rypka Pretrial Mot. at 8. Rypka argues that he was "interrogated without the benefit of Miranda warnings by members of the New York States Police," that the questioning took place in the New York State Police Barracks in the presence of at least two police officers, and that Rypka's "presence in the barracks was not voluntary or consensual." Id. at 19.

The Court should deny the motion without a hearing. The defendant has failed to allege any circumstances that would

17

enable a finding that the interview was custodial.  Therefore, he
is not entitled to a hearing.  See United States v. Thomas, No.
04 Cr. 455 (JSR), 2005 WL 292739, at *1 (S.D.N.Y. Feb. 8, 2005)
(denying evidentiary hearing on motion to suppress because
alleged lack of Miranda warnings, even if true, was immaterial
where defendant failed to allege facts showing he was in
custody).

Law enforcement authorities are required to advise an
individual of his Miranda rights when two preconditions are met,
namely, custody and interrogation.  See Thompson v. Keohane, 516
U.S. 99, 102 (1995).  Thus, "Miranda warnings are required only
where there has been such a restriction on a person's freedom as
to render him 'in custody.'"  Oregon v. Mathiason, 429 U.S. 492,
495 (1977).  "[A] custodial setting is one providing inherently
coercive pressures that tend to undermine the individual's will
to resist and to compel him to speak." United States v. Mitchell,
966 F.2d 92, 98 (2d Cir.1992) (internal citation omitted).  In
determining whether an individual is in custody for Miranda
purposes, "the ultimate inquiry is simply whether there is a
'formal arrest or restraint on freedom of movement' of the degree
associated with a formal arrest." California v. Beheler, 463
U.S. 1121, 1125 (1983) (per curiam) (quoting Mathiason, 429 U.S.
at 495).  The mere fact that an individual being questioned by
law enforcement officials is the subject or target of an
investigation does not trigger the need for Miranda warnings.

18

Mathiason, 429 U.S. at 495; Beckwith, 425 U.S. at 345.  In fact,

"Miranda warnings need not be given even if the government's

criminal investigation has reached the stage where the defendant

is the focus of inquiry." United States v. Burke, 700 F.2d 70,

84 (2d Cir. 1983).

The question of whether an interrogation is "custodial"

is an objective one.  United States v. Kirsteins, 906 F.2d 919,

923 (2d Cir.1990).  "[T]he initial determination of custody

depends on the objective circumstances of the interrogation, not

on the subjective views harbored by either the interrogating

officers or the person being questioned." Stansbury v.

California, 511 U.S. 318, 323 (1994).  Because the inquiry

"focuses on whether a reasonable person in the same situation

would have believed that he was not free to leave," the

defendant's "subjective understanding is therefore irrelevant."

Kirsteins, 906 F.2d at 923.  Thus, even if true, the defendant's

bare assertion in an affidavit that he thought he was being

arrested and felt he was not free to leave is irrelevant, see

id., and does not create a contested issue of fact warranting a

hearing.

It is well-settled in the Second Circuit that a

defendant seeking to suppress evidence bears the burden of

demonstrating that there are disputed issues of fact that would

justify an evidentiary hearing.  See United States v. Gillette,

383 F.2d 843, 848-49 (2d Cir. 1967).  "[A]n evidentiary hearing

19

on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact . . . are in question." <u>United States v. Pena</u>, 961 F.2d 333, 339 (2d Cir. 1992). Here, the defendant has failed to satisfy that burden. He is not entitled to an evidentiary hearing because he plainly has alleged no facts that, if proven, would support a finding that he was in custody at the time he made statements to law enforcement.[5]  See <u>United States v.</u>

_____

[5] In order to create a factual dispute in this context, the defendant must submit sworn factual allegations from a person with personal knowledge of the underlying facts. <u>Gillette</u>, 383 F.2d at 848-49. An affidavit of defense counsel without such personal knowledge will not suffice. <u>Id.</u>; <u>see</u> <u>United States v. Mason</u>, No. 06 Cr. 80 (NRB), 2007 WL 541653, at *2 (S.D.N.Y. Feb. 16, 2007) ("An affidavit of defense counsel who does not have personal knowledge of the facts and circumstances surrounding the events at issue is an insufficient basis for an evidentiary hearing."); <u>United States v. Shaw</u>, 260 F. Supp. 2d 567, 570 (E.D.N.Y. 2003) ("Courts have made clear that attorney affidavits are insufficient to warrant a hearing."); <u>United States v. Roberts</u>, No. 01 Cr. 410 (RWS), 2001 WL 1602123, at *10-11 (S.D.N.Y. Dec. 14, 2001) ("This Circuit has repeatedly made clear that attorney affidavits are insufficient to trigger a hearing, and that a defendant is required to first allege facts which, if proved, would require the granting of relief."); <u>United States v. Ahmad</u>, 992 F. Supp. 682, 685 (S.D.N.Y. 1998). As the Court explained in <u>United States v. Garcia</u>: "Experience shows that unless such serious charges are initiated upon the sworn statement of persons having personal knowledge of the facts, a great deal of time of the parties and the Court is frequently wasted upon unnecessary, expensive and protracted suppression hearings . . . ." 272 F. Supp. 286, 289 (S.D.N.Y. 1976).
Not surprisingly, courts in this Circuit have routinely denied suppression motions without granting an evidentiary hearing where, as here, the motion was based only on an affidavit of defense counsel. See, e.g., <u>Ahmad</u>, 992 F. Supp. at 685; <u>Mason</u>, 2007 WL 541653, at *2; <u>United States v. Thornton</u>, No. 06 Cr. 59 (AWT), 2006 WL 3332985, at *3 (D. Conn. Nov. 16, 2006);

Carrasquillo, No. 98 Cr. 927 (RWS), 2000 WL 45708, at *2
(S.D.N.Y. Jan. 19, 2000) (holding that defendant was not entitled
to evidentiary hearing because he did not "state sufficient facts
which, if proven, would have required the granting of the relief
requested") (citing United States v. Culotta, 413 F.3d 1343, 1345
(2d Cir. 1969)).

Even if it is true that the defendant was interviewed
at the New York State Police Barracks, that does not create a
custodial environment.  See Mathiason, 429 U.S. at 495; see also
United States v. Cota, 953 F.2d 753 (holding that defendant was
not in custody even though she agreed to be interviewed only
after she was removed from her car at gunpoint and handcuffed,
and was driven to the police station by the police in an unmarked
police car); Kirsteins, 906 F.2d at 919 (holding that defendant
was not in custody even though he was questioned for hours at the
U.S. Attorney's Office after the defendant received a letter from
the Department of Justice requesting his presence and agent
accompanied defendant to the street and back during breaks); see
also Thomas, 2005 WL 292739, at *1 (holding that defendant failed
to allege facts warranting a hearing on alleged lack of Miranda
warnings where he averred that he was present for interview at
agents' request).

---

Roberts, 2001 WL 1602123, at *10-11; Shaw, 260 F. Supp. 2d at
570; see also Gillette, 383 F.2d at 848-49 (upholding denial of
evidentiary hearing where motion was based on affidavit of
attorney without personal knowledge).

21

Carrasquillo, No. 98 Cr. 927 (RWS), 2000 WL 45708, at *2
(S.D.N.Y. Jan. 19, 2000) (holding that defendant was not entitled
to evidentiary hearing because he did not "state sufficient facts
which, if proven, would have required the granting of the relief
requested") (citing United States v. Culotta, 413 F.3d 1343, 1345
(2d Cir. 1969)).

Even if it is true that the defendant was interviewed
at the New York State Police Barracks, that does not create a
custodial environment. See Mathiason, 429 U.S. at 495; see also
United States v. Cota, 953 F.2d 753 (holding that defendant was
not in custody even though she agreed to be interviewed only
after she was removed from her car at gunpoint and handcuffed,
and was driven to the police station by the police in an unmarked
police car); Kirsteins, 906 F.2d at 919 (holding that defendant
was not in custody even though he was questioned for hours at the
U.S. Attorney's Office after the defendant received a letter from
the Department of Justice requesting his presence and agent
accompanied defendant to the street and back during breaks); see
also Thomas, 2005 WL 292739, at *1 (holding that defendant failed
to allege facts warranting a hearing on alleged lack of Miranda
warnings where he averred that he was present for interview at
agents' request).

---

Roberts, 2001 WL 1602123, at *10-11; Shaw, 260 F. Supp. 2d at
570; see also Gillette, 383 F.2d at 848-49 (upholding denial of
evidentiary hearing where motion was based on affidavit of
attorney without personal knowledge).

In fact, decisions in this Circuit have emphasized that absent an actual arrest, which the defendant does not allege to have taken place here, a defendant is not "in custody," "unless the authorities affirmatively convey the message that the defendant is not free to leave." United States v. Mitchell, 966 F.2d at 98 (citing Campaneria v. Reid, 891 F.2d 1014, 1021 n. 1 (2d Cir. 1989) (law enforcement officials must "act or speak in a manner that conveys the message that they would not permit the accused to leave"); United States v. Guarno, 819 F.2d 28, 31-32 (2d Cir.1987) ("[I]n the absence of actual arrest something must be said or done by the authorities . . . which indicates that they would not have heeded a request to depart or to allow the suspect to do so.") (quoting United States v. Hall, 421 F.2d 540, 545 (2d Cir. 1969)).

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny Rypka's motion in all respects.

Dated:   White Plains, New York
         February 5, 2008

                    Respectfully submitted,

                    MICHAEL J. GARCIA
                    United States Attorney for the
                    Southern District of New York

          By: _____

                    Nicholas L. McQuaid
                    Assistant United States Attorney
                    (914) 993-1936

23

**AFFIRMATION OF SERVICE**

NICHOLAS L. McQUAID, pursuant to Title 28, United States Code, Section 1746, hereby declares under the penalty of perjury:

That I am an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York.  That, on January 28, 2008, I caused copies of the Government's Memorandum of Law in Opposition to Defendants' Pretrial Motion to be delivered by ECF and Federal Express to:

> Andrew Quinn
> Quinn & Mellea, LLP
> 399 Knollwood Road, Suite 220
> White Plains, NY 10603

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated:    White Plains, New York
          February 5, 2008


                                    _____
                                    Nicholas L. McQuaid

24

# EXHIBIT
# A

**STATE OF NEW YORK: COUNTY OF WESTCHESTER**
**TOWN COURT: TOWN OF TARRYTOWN**
————————————————————————X
IN THE MATTER OF THE APPLICATION FOR A            **SEARCH WARRANT**
SEARCH WARRANT FOR
40 NORTH WASHINGTON STREET                        **ORDER**
TARRYTOWN, NEW YORK 10591
————————————————————————X

STATE OF NEW YORK            )
                             )   ss:
COUNTY OF WESTCHESTER        )


IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK


TO: ANY OFFICER OF THE NEW YORK STATE POLICE OR ANY INVESTIGATOR
OF THE WESTCHESTER COUNTY DISTRICT ATTORNEY'S OFFICE AND ANY
POLICE OFFICER OF THE TARRYTOWN POLICE DEPARTMENT:

Proof by affidavit dated September 13, 2006, having been made before me by Investigator DENZIL

FEARON, employed by the New York State Police, that there is reasonable cause to believe that a

search of 40 NORTH WASHINGTON STREET, TARRYTOWN, NY, the above captioned

premises, will reveal evidence of violations of Penal Law Article 263;

You are hereby commanded within ten days of the date of this Order be executed between the hours

of 6:00 a.m. and 9:00 p.m. to enter 40 NORTH WASHINGTON STREET, TARRYTOWN, NY,

and seize the following property:

    a)  Any and all computers, as that term is defined in Penal Law § 156.00(1), and cameras

        containing any material related to  violations of Article 263 of the Penal Law of the State

        of New York;

    b)  Any and all manuals and documentation concerning the operation and ownership of said

        computers;

11

c) Any and all handwritten notes, images or other documentation concerning online contact and/or sexual contact with minors; and,

d) Any and all images, whether in a computer or in tangible form, of minors engaged in sexual conduct.

e) Any and all records of ownership and/or authorship residing on the seized computers that would be useful in ascertain the ownership and control of the computers.

f) Any and all information present on the computers that would reveal any prior unauthorized use of the computers via "trap door" hacking programs.

After the return to the Court without unnecessary delay, all the seized property shall remain in the custody of the New York State Police and/or the Westchester County District Attorney's Office, subject to further Court order.

Dated: September 13, 2006
White Plains, New York

Time: _3:14 P.M._

Hon. Rory Bellantoni
County Court Judge,
Sitting as a Judge of
the Town of Tarrytown

12

# EXHIBIT B

NEW YORK: COUNTY OF WESTCHESTER
IN COURT: TOWN OF TARRYTOWN
————————————————————————————X
IN THE MATTER OF THE APPLICATION FOR A          SEARCH WARRANT
SEARCH WARRANT FOR
40 NORTH WASHINGTON STREET                      APPLICATION
TARRYTOWN, NEW YORK 10591
————————————————————————————X

DENZIL FEARON, an Investigator with the New York State Police, being duly sworn,

deposes and says:

1) I am the applicant herein and am a public servant of the kind specified in Section 690.05,

Subdivision 1 of the Criminal Procedure Law, my title being that of Investigator with the Division

of New York State Police. I am locally assigned to the New York State Police Troop K Cyber-

Terrorism Unit, located in Poughkeepsie, New York. I have been a member of the New York State

Police since 1993. In my capacity as an investigator and a member of the Cyber-Terrorism Unit, I

have been involved in the investigation of offenses relating to computers and the Internet, as well as

investigations involving the distribution of child pornography via the Internet since 2002. I have

attended training on the subject of online criminal investigation, the distribution of child

pornography, and computer evidence handling and forensics. More specifically, I have attended the

Investigation of On-Line child Exploitation conducted by the New York State Division of Criminal

Justice Services and the SEARCH Group, the Analytical Investigative Techniques, including the

use of the Internet for Investigative Purposes, conducted by the Multijurisdictional Counterdrug

Task Force, Basic Data Recovery and Analysis, conducted by the National White Collar Crime

Center, Introduction to Cyber-Crime Investigations, conducted by the Federal Bureau of

Investigation, and the National Infrastructure Protection Center (NIPC), Basic Computer Intrusion

Investigations, conducted by the Federal Bureau of Investigation, and the National Infrastructure

Protection Center (NIPC), the Investigation of On-Line Child Exploitation conducted by the New

York State Division of Criminal Justice Services, and the SEARCH Group, and the Examination of Digital Child Pornography, conducted by the Westchester County District Attorneys Office, and the New York State Division of Criminal Justice Services.

2) Based on my training and experience, it is my opinion that collectors of child pornography maintain their collections over many years and do not destroy or discard their materials. Because these materials are illegal and difficult to obtain, once a collector procures them he will likely hoard them in a safe place, typically a private home.

3) On June 26, 2006, the NYS Internet Crimes Against Children (ICAC) Task Force received a report of possession/dissemination of child pornography from the National Center for Missing and Exploited Children (NCMEC) Cyber Tip Line. According to NCMEC, Cyber Tip Line Report Number 398857 was reported by America Online on June 13, 2006, stating that an individual with the America Online screen name "alertexchief" and the email address alertexchief@aol.com had emailed one image of child pornography.

4) The New York State Attorney General's Office served a subpoena upon America Online, Inc. requesting subscriber information for the user of America Online Screen Name "alertexchief". On July 11, 2006, AOL complied with the subpoena and the results of the subpoena revealed the following subscriber: ANTHONY RYPKA, 40 NORTH WASHINGTON STREET, TARRYTOWN, NY 10591 with a telephone number of 914.332.9426. A check of NYS Department of Motor Vehicle records also reveals that a subject with the name of ANTHONY RYPKA resides at 40 NORTH WASHINGTON STREET, TARRYTOWN, NY.

5) I have examined the image. The image is of a naked, pubescent female lying on what appears to be a bed with a naked, publescent male. The female child has her legs draped over the male's body and she is holding his penis in a turgid state. The picture has been verified to be an image of a minor by NCMEC. As part of their duties, NCMEC keeps and maintains a database of

2

known images of child pornography. I have been informed by Investigator John Vescio of the New York State Police that the residence is a single family home with light yellow siding, a two-story colonial style with a front porch, white spindle railing on porch, white trim around windows, storm door on front door with white trim,

front door brown wooden door with Welcome sign on it, floral pattern mailbox to right of front door, flagpole with the American Flag in front yard. Based upon the investigation your deponent has conducted, your deponent has cause to believe that a computer located at 40 NORTH WASHINGTON STREET, TARRYTOWN, NEW YORK, contains at least one image of child pornography, and has made at least one image of child pornography available for distribution via the Internet, in violation of Article 263 of the Penal Law.   Your deponent further states that there is reason to believe that evidence will be found at 40 NORTH WASHINGTON STREET, TARRYTOWN, NEW YORK that constitutes evidence of this crime.

6) I further know and have been advised by members of our Computer Crimes Unit who are involved in the investigation that conducting a search of a computer system, documenting the search and making evidential copies is a lengthy process.  It is necessary to determine that no security devices are in place that could cause the destruction of evidence during the search.  In some cases, it is impossible to even conduct the search without expert assistance.  Since computer evidence is extremely vulnerable to tampering or destruction, examination will require removal of the system from its present location and transferal to a forensic laboratory, which will assist in retrieving the records and data authorized to be seized in a controlled environment.

7) Your deponent recognizes that some of the above described property is data that will be contained on said computer in electronic and machine readable media which is not readable by your deponent in its present state. By this application your deponent requests authorization for himself and other searching members to seize, examine, listen to, read, view and maintain the above-

3

described property and to convert it to humanly readable and viewable form as necessary.

8) Your deponent further acknowledges that the temporal proximity of this application and the evidence supporting probable cause may arouse the issue of staleness. As such, I tender the following information to support this application.

9) Whether the requisite probable cause exists to procure a search warrant is determined by weighing the totality of circumstances. Illinois v. Gates, 462 U.S. 213 (1983). This test requires that the issuing official "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him…there is a fair probability that contraband or evidence of a crime will be found in a particular place." Jones v. United States, 362 U.S. 257 (1960). Naturally ingrained in assessing the validity of a warrant is the temporal proximity or remoteness of the evidence. Rosencranz v. United States, 356 F.2d 310, 315-16 n.3 (1st Cir. 1966).

10) Evidence supporting probable cause cannot be rejected for staleness as long as there is a reason to believe that those facts are still in existence. United States v. Beltempo, 675 F.2d 472, 477 (2d Cir. 1982). The Second Circuit has laid out several determining factors to evaluate staleness including, but not limited to, "the currency and specificity of information, the reliability of the sources of information, the nature of the alleged criminal activity, the duration of that activity in the location in question and the nature of the evidence being sought." United States v. McGrath, 622 F.2d 36, 42 (2d Cir. 1980). Accordingly, the span of time between discovery of the evidence and the application for the search warrant is only one criterion – and not necessarily the most important criterion – to consider when evaluating staleness. United States v. Williams, 897 F.2d 1034, 1039 (10th Cir. 1990).

11) The currency of the evidence becomes less significant in assessing probable cause where the suspected criminal activity is of a continuous nature, and the instrumentalities of the crime are unlikely to be destroyed. United States v. Smith, 9 F.3d 1007, 1014 (2d Cir. 1993).

4

Courts have repeatedly held that collectors of child pornography often retain their materials, rarely

if ever deleting them. United States v. Cox, 190 F. Supp. 2d 330, 333 (S.D.N.Y. 2002). As noted

by Senior District Judge Howard G. Munson:

> The observation that images of child pornography are likely to be hoarded by persons
>
> interested in those materials in the privacy of their homes is supported by common
>
> sense and the cases. Since the materials are illegal to distribute and possess, initial
>
> collection is difficult. Having succeeded in obtaining images, collectors are unlikely
>
> to quickly destroy them. Because of their illegality and the imprimatur of severe
>
> social stigma such images carry, collectors will want to secret them in secure places,
>
> like a private residence. This proposition is not novel in either state or federal court:
>
> pedophiles, preferential child molesters, and child pornography collectors maintain
>
> their materials for significant periods of time.

United States v. Lamb, 945 F. Supp. 441, 460 (N.D.N.Y. 1996). Given that each case must be

independently evaluated on the circumstances surrounding it, no hard and fast rule has been set

governing the permissible span of time before staleness sets in. United States v. Dauphinee, 538

F.2d 1, 5 (1st Cir., 1976). Nonetheless, courts have been reluctant to suppress search warrants on

the account of staleness when the crime involves images of children engaged in lewd acts. United

States v. Guay, 2001 U.S. Dist. LEXIS 20508 (D. Me., 2001).

12) It was reasonable to believe child pornography would be found in a suspect's apartment

even though ten months had passed since the discovery of evidence supporting the search warrant

affidavit. United States v. Lacy, 119 F.3d 742 (9th Cir., 1997), cert denied, 118 S. Ct. 1571 (1998).

United States Customs agents obtained information that Lacy downloaded six computerized images

from a Danish computer bulletin board known to distribute child pornography. Id. at 745.

Although the agents could only verify that two of the pictures contained child pornography, their

5

information also included the exact time of the call and the names of the files downloaded. Id. Ten

months after the transmissions agents executed a search warrant and discovered images of children

engaged in sexually explicit activity. Id. Lacy was subsequently convicted on child pornography

charges. Id. Denying Lacy's motion to suppress the fruits of the search warrant, the Court held that

the probable cause was not stale because, as described in the affidavit, the tendency of child

pornography collectors to preserve their collections made it likely that the illicit images would be

found in Lacy's apartment – even after the passage of a significant amount of time. Id. at 746.

13)  Information over a year old that relates to child pornography charges is not stale as a

matter of law. Unites States v. Newsom, 402 F.3d 780 (8th Cir., 2005).  In July of 2001, Audry

Edwards found images of child pornography on the computer of Ernest Newsom, her live-in

boyfriend. Id. at 781.  Although Edwards had moved out, a year later she agreed to watch

Newsom's house while he was out of town. Id.  While using Newsom's computer Edwards found

two video clips of her daughter removing a towel after getting out of the shower. Id. at 782.  Based

primarily on the premise that Newsom likely still had the year old images on his computer, the

Lawrence Police Department obtained a search warrant and discovered numerous videos and

images of child pornography. Id.  Upholding the search warrant, the Court found that "information

a year old is not necessarily stale as a matter of law, especially where child pornography is

concerned." Id. at 783.  Additionally, that when determining the staleness of evidence, the age of

the information is only one factor to consider and "if other factors indicate that the information is

reliable the magistrate should not hesitate to issue the warrant." Id. (quoting United States v. Spry,

190 F.3d 829, 836 (7th Cir. 1999)).

14)  Notwithstanding the passage of seventeen months, evidence of child pornography was

properly included in a search warrant affidavit. United States v. Bateman, 805 F. Supp. 1041

(D.N.H., 1992).  Over the course of a fifteen-year relationship, Bateman and an informant

exchanged videos and images depicting minors engaged in sexually explicit activity. Id. at 1042. Although the informant had one subsequent contact with Bateman, February 2001 was the last time he could confirm that Bateman sent him child pornography. Id. at 1043. Over a year later, on July 16, 1992, the Keene Police Department applied for a warrant and subsequently searched Bateman's home. Id. The police discovered child pornography and charged Bateman with possession of the illicit material. Id. The Court denied Bateman's motion to suppress the evidence found at his home reasoning that "the unique nature of the object of the warrant (child pornography), the unique nature of the creation, storage, keeping, alteration, potential of destruction of the child pornography material, and the recognized interest which the states and the federal government have in drying up the distribution network for child pornography and controlling production itself, are legitimate factors which militate against finding staleness." Id.

15) Evidence of a transmission of 19 images six months prior to a search warrant application was not stale even though it was the sole verification that the defendant possessed child pornography. United States v. Hay, 231 F.3d 630 (9th Cir., 2000), cert denied, 534 U.S. 858 (2001). A File Transfer Protocol log on an accused child pornography trafficker's computer showed that 19 illicit images had been sent to Alexander Hay on November 29, 1996. Id. at 632. On May 28, 1997, United States Customs agents obtained a search warrant based almost exclusively on this information. Id. at 633. The only other evidence included in the application simply confirmed that the IP address and computer belonged to Hay. Id. Following his indictment on child pornography charges, Hay moved to suppress this evidence for staleness. Id. In validating the warrant, the Court held that a pattern of activity was not necessary to infer long-term storage of child pornography. Id. at 636.

16) Akin to the federal courts, when child pornography is involved, New York has been reluctant to exclude the fruits of a search warrant due to the staleness of probable cause. People v.

7

Manngard, 275 A.D.2d 378 (N.Y. App. Div., 2000), leave to appeal denied, 95 N.Y.2d 966 (N.Y.,
2000). Evidence supporting the issuance of a warrant to search Manngard's home included facts
demonstrating that he had videos and images of children engaged in sexual acts stored on his
computer, and an affidavit of an expert in child pornography crimes that explained pedophiles'
propensity to retain their collections of illicit materials. Id. at 379. Although the Court did not
quantify the time-lapse, because the evidence clearly revealed that the defendant was engaged in
pedophilia, the probable cause was not stale. Id.

    17) Ultimately, the existence of probable cause is determined by analyzing the totality of
circumstances. Gates, 462 U.S. 213. Although specific determining factors are used to ascertain
whether probable cause is stale, ultimately if there is a reason to believe that the facts supporting the
probable cause are still in existence, then the search warrant remains valid. McGrath, 622 F.2d 36,
42; Beltempo, 675 F.2d 472, 477. Pedophiles have a proven propensity to retain their collections of
child pornography, rarely if ever discarding it. Lamb, 945 F. Supp. 441, 460. In spite of the fact
that there is no hard and fast rule, the federal courts are in seemingly solid agreement that the
temporal proximity of child pornography evidence is immaterial to search warrant affidavits. Lacy,
119 F.3d 742 (9th Cir., 1997); Newsom, 402 F.3d 780; Bateman, 805 F. Supp. 1041; Hay, 231 F.3d
630. Moreover, that it is unnecessary to show a pattern of activity to bolster the premise that child
pornography is often stored for long periods of time. Hay, 231 F.3d 630. In line with federal case
law, New York courts have held that evidence of child pornography is capable of negating claims of
staleness. Manngard, 275 A.D.2d 378. In the end, the gap of time between the discovery of the
evidence and the application for the search warrant is not given much weight because of the state's
recognized interest in eliminating the distribution and production of child pornography, the
propensity of child pornography collectors to retain their collection for significant periods of time,
and the state's moral obligation to prevent the exploitation of children. Bateman, 805 F. Supp.

8

1041, 1044.

18) Wherefore, I respectfully request that the Court issue a search warrant and order of seizure of the aforementioned described property found at the aforementioned residence of 40 NORTH WASHINGTON STREET, TARRYTOWN, NY, in order that it may be ascertained if any such property constitutes, substantiates or supports the violations of Article 263 of the Penal Law of the State of New York. Additionally, it is requested that any and all seized property of the aforementioned described manner be held for analysis and evaluation by the New York State Police and/or the Westchester County District Attorney's Office.

19) Therefore, your deponent requests that the Court issues an Order in the form attached directing the search of 40 NORTH WASHINGTON STREET, TARRYTOWN, NY, and the seizure of the following property:

a) Any and all computers, as that term is defined in Penal Law § 156.00(1), and cameras containing any material related to violations of Article 263 of the Penal Law of the State of New York;

b) Any and all manuals and documentation concerning the operation and ownership of said computers;

c) Any and all handwritten notes, images or other documentation concerning online contact and/or sexual contact with minors; and,

d) Any and all images, whether in a computer or in tangible form, of minors engaged in sexual conduct.

e) Any and all records of ownership and/or authorship residing on the seized computers that would be useful in ascertain the ownership and control of the computers.

f) Any and all information present on the computers that would reveal any prior unauthorized use of the computers via "trap door" hacking programs.

Inv. DENZIL FEARON
New York State Police
Troop K– Cyber-Terrorism Unit

Sworn to before me the
13th day of September 2006.

HON. RORY BELLANTONI
County Court Judge,
Sitting as a Judge of
The Town of Tarrytown

10

# EXHIBIT
# C

Approved: _____
BRENT S. WIBLE
Assistant United States Attorney

COPY

Before:  HONORABLE MARK D. FOX
         United States Magistrate Judge
         Southern District of New York

- - - - - - - - - - - - - - - - - -x

07 MAG. 1076

UNITED STATES OF AMERICA            :    COMPLAINT
                                    :
                    - v. -          :    Violation of
                                    :    18 U.S.C.
ANTHONY RYPKA, JR.,                 :
                                    :    §§ 2252A(a)(2)(B),
                    Defendant.      :    2252A(a)(5)(B)
                                    :
                                    :    COUNTY OF OFFENSE:
                                    :    WESTCHESTER
                                    :
- - - - - - - - - - - - - - - - - -x

SOUTHERN DISTRICT OF NEW YORK, ss.:

        STEPHEN R. TORTORELLA, being duly sworn, deposes and
says that he is a Special Agent of the Federal Bureau of
Investigation ("FBI"), and charges as follows:

COUNT ONE

        On or about June 12, 2006, in the Southern District of
New York, ANTHONY RYPKA, JR., the defendant, unlawfully,
willfully, and knowingly did receive and distribute material
containing child pornography that had been mailed and shipped and
transported in interstate or foreign commerce by any means,
including by computer, to wit, computer files containing images
of child pornography.

        (Title 18, United States Code, Section 2252A(a)(2)(B).)

COUNT TWO

        In or about September 2006, in the Southern District of
New York, ANTHONY RYPKA, JR., the defendant, unlawfully,
willfully, and knowingly did possess computer files, videos, and
other materials that contained images of child pornography that
had been mailed, and shipped, and transported in interstate or
foreign commerce by any means, including by computer, and that
was produced using materials that had been mailed, and shipped
and transported in interstate and foreign commerce by any means,

including by computer, to wit, computer files containing images of child pornography.

(Title 18, United States Code, Section 2252A(a)(5)(B).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

1.    I am a Special Agent of the Federal Bureau of Investigation ("FBI"), and I have been involved in the investigation of the above-described offense.  I am familiar with the facts and circumstances set forth below from my personal participation in the investigation, including my review of pertinent documents, and from my conversations with fellow law enforcement officers.  Because this affidavit is submitted for the limited purpose of demonstrating probable cause, I have not included details of every aspect of the investigation.  Where I relate statements, conversations, and actions of others, those statements, conversations, and actions are related in substance and in part, except where otherwise indicated.

<u>APPLICABLE DEFINITIONS</u>

2.    The following terms have the indicated meaning in this Complaint:

a.    The terms "minor," "sexually explicit conduct," "visual depiction," and "child pornography," as used herein, are defined as set forth in Title 18, United States Code, Section 2256.

b.    The term "computer" as used herein is defined as set forth in Title 18, United States Code, Section 1030(e)(1).

<u>THE INVESTIGATION</u>

3.    On or about June 13, 2006, the National Center for Missing and Exploited Children ("NCMEC") Cyber Tipline received a tip that a person with the screen name "alertexchief" and the e-mail address "alertexchief@aol.com" had uploaded to this e-mail address two images of child pornography on or about June 12, 2006, at approximately 11:41 p.m. and 11:45 p.m., respectively.

4.    According to records of America Online ("AOL"), the AOL account associated with the screen name "alertexchief" and the e-mail address "alertexchief@aol.com" is subscribed to by ANTHONY RYPKA, JR., the defendant, at an address in Tarrytown, New York.

5.    On or about September 13, 2006, a search warrant was issued by a County Court Juge, sitting as a Judge of the Town of Tarrytown, for the home address of ANTHONY RYPKA, JR., the defendant.  After the warrant was executed by investigators with the New York State Police on or about September 14, 2006, RYPKA told the investigators that he had a thumb drive in a hat on top of his locker at the Tarrytown Police Department (the "Thumb Drive").  Investigators with the New York State Police then recovered the Thumb Drive.

6.    An investigator in the high-tech bureau of the Westchester County District Attorney's Office has conducted an examination of the Thumb Drive.  The examination revealed in excess of 10 still images containing visual depictions of minors engaged in sexually explicit conduct.  The examination revealed also the presence of both of the images of child pornography uploaded to the e-mail address "alertexchief@aol.com" on or about June 12, 2006.  The examination further revealed that the Thumb Drive contained at least one image of a prepubescent female performing fellatio on an adult male.

WHEREFORE, deponent prays that an arrest warrant be issued for ANTHONY RYPKA, JR., the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

_____
STEPHEN R. TORTORELLA
Special Agent
Federal Bureau of Investigation

Sworn to before me this
_____ day of July, 2007

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

3

# EXHIBIT
# D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - x
                   :

UNITED STATES OF AMERICA       :     INDICTMENT

      - v. -              :     **07 CRIM. 980**

ANTHONY RYPKA, JR.,         :

       Defendant.      :

                                 :     U.S ATTORNEY
                                 :     FOR THE S.D.N.Y.

- - - - - - - - - - - - - - - - - - x

RECEIVED
WHITE PLAINS OFFICE

COUNT ONE

      The Grand Jury charges:

      1.  On or about June 12, 2006, in the Southern District
of New York, ANTHONY RYPKA, JR., the defendant, unlawfully,
willfully, and knowingly did receive and distribute material
containing child pornography that had been mailed and shipped and
transported in interstate or foreign commerce by any means,
including by computer, to wit, computer files containing images
of child pornography.

      (Title 18, United States Code, Section 2252A(a)(2)(B).)


COUNT TWO

      The Grand Jury further charges:

      2.  In or about September 2006, in the Southern
District of New York, ANTHONY RYPKA, JR., the defendant,
unlawfully, willfully, and knowingly did possess computer files

and other materials that contained images of child pornography that had been mailed, and shipped, and transported in interstate or foreign commerce by any means, including by computer, and that were produced using materials that had been mailed, and shipped and transported in interstate and foreign commerce by any means, including by computer, to wit, computer files containing images of child pornography.

(Title 18, United States Code, Section 2252A(a)(5)(B).)

## COUNT THREE

The Grand Jury further charges:

3.    In or about September 2006, in the Southern District of New York, ANTHONY A. RYPKA, JR., the defendant, unlawfully, willfully, and knowingly did possess a machinegun, to wit, RYPKA possessed a .45 automatic Thompson/Colt, model 1921, fully automatic sub-machine gun.

(Title 18, United States Code, Section 922(o).)

## COUNT FOUR

The Grand Jury further charges:

4.    In or about September 2006, in the Southern District of New York, ANTHONY A. RYPKA, JR., the defendant, unlawfully, willfully, and knowingly did receive and possess a firearm which is not registered to him in the National Firearms

Registration and Transfer Record, to wit, a .45 automatic

Thompson/Colt, model 1921, fully automatic sub-machine gun.

     (Title 26, United States Code, Section 5861(d).)

FOREPERSON

MICHAEL J. GARCIA
United States Attorney