UNITED STATES OF AMERICA
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,

        Plaintiff,

          v.                     Docket No.:  07 Cr. 980 (CM)

ANTHONY RYPKA,

        Defendant.
-------------------------------------------------------X

---

**DEFENDANT ANTHONY RYPKA'S REPLY AFFIRMATION
TO THE GOVERNMENT'S OPPOSITION TO DEFENDANT'S
PRETRIAL MOTION**

---

ANDREW C. QUINN, ESQ.
Quinn & Mellea, LLP
Attorney for ANTHONY RYPKA
399 Knollwood Road, Suite 220
White Plains, New York 10603
(914) 995-0555

JOHN PATTEN, ESQ.
Attorney for ANTHONY RYPKA
30 Vesey Street
Penthouse Suite
New York, New York 10007

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION……………………..………………………………………   3

AFFIRMATION IN
SUPPORT……..……………….……………………………………………………   5

MEMORANDUM OF POINTS AND
AUTHORITIES…………………………….....................................................   8

Introductory
Statement……………………………………………………............................   8

     I.     Defendant's Motion to Suppress Evidence Obtained From Search
Warrant Signed on September 13, 2006 pertaining to
Defendant's Residence, Computers and
Computer Equipment Should be Granted ………………..……………….   10

     II.    Defendant's Motion To Suppress Statements Made By the
Defendant to Law Enforcement Officers While
in Custody for Failure of Law Enforcement
Officials to Provide <u>Miranda</u> Warnings Should be Granted …………………   18

Conclusion      ………….………………………………………………………………   22

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

(HONORABLE COLLEEN MCMAHON)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: 07 Cr. 980 (CM) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPLY AFFIRMATION IN SUPPORT** |
| ANTHONY RYPKA | ) | **OF ALL MOTIONS** |
| | ) | |
| Defendant. | ) | |
| | ) | |

I, ANDREW C. QUINN, ESQ., an attorney duly admitted to practice before the Courts of the State of New York, and the District Court of the United States of America, Southern District of New York, affirm the following under penalty of perjury:

1.  I am the attorney representing Mr. Anthony Rypka in the above-captioned matter.  As such I am fully familiar with the facts, circumstances, pleadings and proceedings heretofore had herein.

2.  I make this Affirmation in Reply to the arguments proffered by the Office of the United States Attorney's Office in Opposition to Defendant's Motions to Suppress Evidence obtained from a Search Warrant pertaining to Defendant's residence, computers and computer equipment; and a Motion to Suppress Statements allegedly made by Defendant to Law Enforcement Officers While in Custody for Failure of Law Enforcement Officers to Provide *Miranda* Warnings.

3.  I certify that any and all statements included in the within Reply Affidavit that are not otherwise supported by cited authority are true and correct to my personal

knowledge, information and belief.  My knowledge and belief are based upon my participation in the proceedings of this matter heretofore had herein, investigation of this matter as performed in my capacity as Counsel, review of documents and discovery provided thus far, conversations with my client and review of the file as contained and kept in my office.

Dated:     March 18, 2008
           White Plains, New York


           ____/s/_____
           ANDREW C. QUINN, ESQ.

           ____/s/_____
           JOHN PATTEN, ESQ.


VIA ECF:   UNITED STATES DISTRICT COURT, SDNY
           Clerk of the Court
           300 Quarropas Street
           White Plains, New York 10601
           *Courtesy Copy via First Class Mail*

           UNITED STATES ATTORNEY'S OFFICE, SDNY
           Attn.: Nicholas McQuaid, AUSA
           300 Quarropas Street
           White Plains, New York 10601
           *Courtesy Copy via First Class Mail*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

(HONORABLE COLLEEN MCMAHON)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: 07 Cr. 980 (CM) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF POINTS AND** |
| ANTHONY RYPKA, | ) | **AUTHORITIES IN REPLY TO** |
| | ) | **MEMORANDUM IN OPPOSITION** |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

### INTRODUCTORY STATEMENT

On September 13, 2006, defendant Anthony Rypka was arrested and eventually charged in a four (4) count indictment under Docket Number 07-CR-980(CLB) with one count of receiving and distributing material containing child pornography, to wit: computer files containing images of child pornography, in violation of 18 USC §2252A(a)(2)(B); knowing possession of materials that contained child pornography, to wit: computer files containing images of child pornography, in violation of 18 USC §2252A(a)(5)(B); possession of a fully automatic sub-machine gun, in violation of 18 USC §922(o); and possession of an unregistered firearm, to wit: a fully automatic sub-machine gun, in violation of 18 USC §5861(d).

By Notice of Motion dated January 15, 2008, Defendant submitted his Omnibus Motion seeking to suppress evidence obtained by law enforcement officials based upon a search warrant signed by Westchester County Court Judge Rory Bellantoni on September 13, 2006

which authorized the search of Defendant's home located in Tarrytown, New York, and authorized the seizure of computer equipment, cameras, notes, images or other documentation concerning online contact and/or sexual contact with minors; any and all images, whether in a computer or in tangible form, of minors engaged in sexual conduct, and any and all records of ownership and/or authorship residing on the seized computers that would be useful in ascertaining the ownership and control of the computers; and any and all information present on the computers that would reveal any prior unauthorized use of the computers via "trap door" hacking programs, on the grounds that the search warrant affidavit failed to provide sufficient probable cause to authorize the search of the defendant's residence of the seizure of property from within the defendant's residence, or, in the alternative, granting a pretrial hearing thereon.

Additionally, Defendant sought an order to suppress from use at trial any and all statements made by the Defendant to any and all law enforcement officials based upon the failure of arresting officers to provide so-called <u>Miranda</u> warnings to the defendant prior to questioning and while defendant was in the custody of such law enforcement officers; or, in the alternative, granting a pretrial hearing thereon.

By Affirmation in Opposition, the United States argues that the Defendant should not receive the requested relief. Specifically, the Government argues that the search warrant was sufficiently supported by probable cause to justify its issuance and resultant execution. Alternatively, the Government argues that the executing officers relied upon the warrant in good faith. See <u>United States v. Leon</u>, 468 U.S. 897 (1984).

With respect to Defendant's motion seeking to suppress statements made by him to the arresting officers, the Government seeks to deny the Defendant a hearing (1) on the grounds that no affidavit containing sworn factual allegations was filed therewith; and (2) that the defendant

was not entitled to <u>Miranda</u> warnings merely because he was present in the New York State Police Barracks when questioned by uniformed members of the State Police.

For the following reasons, Defendant's Motion to Suppress should be granted, the Government's Motion in Opposition should be denied, and the Defendant should receive the relief he requests in its entirety.

**I.      DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED PURSUANT TO THE EXECUTION OF THE SEARCH WARRANT ON SEPTEMBER 13, 2006 SHOULD BE GRANTED**

The Government argues that Judge Bellantoni's issuance of the search warrant was supported by probable cause. Such an argument, it is respectfully submitted, is not supported by the four corners of the warrant itself, the operative portions of the Fearon Affidavit filed in support thereof, and/or the rapidly changing science and technology behind the use of computer devices and the internet.

Defendant established in his Affirmation in Support that the facts known to Investigator Fearon, and proffered to the Court in support of the search warrant, were insufficient to establish probable cause. Specifically, the Fearon Affidavit - the sole basis upon which Judge Bellantoni issued the warrant for the search of the defendant's home – did not establish that there was a "fair probability that evidence of a crime" would be found in the defendant's home (see <u>Illinois v. Gates</u>, 462 U.S. 213, 235 (1983)); that is was the defendant who sent the email containing the single photograph of child pornography which initiated the investigation; that there was any common-sense basis to conclude that the email containing the photograph of child pornography was sent from the defendant's computer, much less his residence; and/or that there was probable cause to believe that any child pornography would be present at defendant's residence, because

there were no facts in the Fearon Affidavit to suggest the defendant was a "collector of child pornography."

Probable cause to sustain a warrant does not require *prima facie* proof that the defendant possessed child pornography, but is a common-sense test that requires that the government show that there is a fair probability that contraband or evidence of a crime will be found in a particular place. Illinois v. Gates, 462 U.S at 235. Such "common-sense" determinations must be based "upon the content set forth in the affidavit" of Investigator Fearon. Gates, at 238. While probable cause is a relaxed standard, not a legal determination of guilt or innocence (United States v. Leon, 468 U.S. 897 (1984); Gerstein v. Pugh, 420 U.S. 103 (1984)), it remains a particularized standard, which requires that a search or seizure of a person must be supported by probable cause particularized with respect to that person. Ybarra v. Illinois, 444 U.S. 85, 91 (1979). In the instant case, even the low standard set forth in reviewing the sufficiency of a warrant has not been met.

The Government properly states that two factual showings are required to establish probable cause to search a residence: (1) that a crime was committed; and (2) that there is probable cause to believe that evidence of such crime is located at the residence to be searched. See McQuaid Memorandum at p. 5. citing United Stated v. Travisano, 724 F.2d 341, 345 (2d Cir. 1983). The defendant does not challenge that a crime was committed. However, the Fearon Affidavit did not provide sufficient evidence to believe that evidence would be found at the residence of the defendant; thus, the issuance of the search warrant was improper.

A.  The Fearon Affidavit Did Not Establish Probable Cause That "Alertexchief" Was a Collector of Child Pornography, or that Illegal Images Would Be Located at the Defendant's Residence. Thus, No Probable Cause Existed To Search Defendant's Residence.

The Government argues that there was good reason to believe that the image sent in the email would be stored in the residence of the person who sent it because collectors of child pornography "maintain their collections over many years and do not destroy or discard their materials". McQuaid Memorandum at 6-7, citing Fearon Affid. ¶2.  This circular argument presupposes that (1) the defendant was a "collector" of child pornography; and (2) the computer from which the offending image was sent belonged to the defendant and was located at his residence. Nothing in the Fearon Affidavit supports these necessarily joined conclusions.

First, the only fact submitted regarding defendant's alleged status as a "collector" and the seizure of the defendant's computer equipment was that single image was forwarded from the "alertexchief@aol.com" screen name on June 26, 2006, and no other dates. No information contained in the Fearon Affidavit suggests in any manner that defendant was a "collector of child pornography". To the contrary, the only allegation relating to defendant's use, possession and/or distribution of child pornography is contained in paragraph three (3) of the Fearon Affidavit, which states that an individual using the "alertexchief@aol.com" screen name had emailed "one image of child pornography". See Fearon Affid. ¶ 3. There is no suggestion in the warrant that illegal images had been distributed by that screen name user on other occasions, or that more than a single image had ever been sent from "alertexchief@aol.com". There is no allegation or evidence that "alertexchief@aol.com" possessed other images of child pornography, that he had

a longstanding fetish or fascination with child pornography, that he had prior arrests for such illegal behavior, or that he had downloaded or sent child pornography on more than one occasion.

The Court is respectfully reminded that the date of the illegal transmission was June 13, 2006, and the date of the application for the search warrant was September 13, 2006 – nearly three months after the only transmission was detected. No information was contained in the Fearon Affidavit to suggest that a follow-up investigation was conducted to confirm whether "alertexchief@aol.com" visited illegal websites or had received images of child pornography from other users. Indeed, no information was included in the Fearon Affidavit to support the statement that "collectors" hoard images at home, other than the subjective opinion and experience of its author.

Indeed, it is apparent from the Fearon Affidavit that the statement contained in ¶ 2 is a boilerplate allegation, not particularized to the facts proffered in support of the search warrant. To the contrary, it is respectfully suggested that, in the government's view, any and all individuals who have viewed, forwarded, transmitted or received a single image of child pornography are "collectors" of such images whose homes and computers should be searched. Such a broad and sweeping conclusion is not supported by the facts contained in the Fearon Affidavit. Instead, the Court was required to rely upon the "training and experience" of Investigator Fearon (Fearon Affid. ¶1), and was not provided with an objective basis upon which to conclude that all individuals who have transmitted or received a single image of child pornography are "collectors".

The cornerstone of the Government's reliance on the Fearon Affidavit as support for the issuance of the search warrant is the belief that "alertexchief@aol.com" was a "collector" of child pornography. Absent some standard of what constitutes a collector, or some definition of the term "collector" in relation to the application, Judge Bellantoni could not have reasonably determined that probable cause existed to warrant a search of the defendant's residence.

The Government further argues that there existed a sufficient nexus between "alertexchief@aol.com" and the defendant to justify a search of defendant's residence. The Government points out that the subscriber information provided by AOL identified the email as belonging to defendant, and that the New York State Department of Motor Vehicles confirmed the defendant's address. The Government then takes the inferential leap of faith when it argues that "[g]iven the pattern of behavior associated with collectors of child pornography, there was reason to conclude that the image sent from the alertexchief account would still be maintained by the collector who had sent the email, and that the collection would be hoarded in a safe place, typically a private home". McQuaid Memorandum, p. 7. Thus, the government relies on the single transmission of a single image of child pornography to conclude that evidence would be hoarded in the residence, because that is what collector's typically do, and where they typically view it. The Government makes no effort whatsoever to particularize the facts of the instant investigation to the defendant's residence, cf. Ybarra v. Illinois, 444 U.S. 85, 91 (1979), nor does the Government attempt to justify its determination that "alertexchief" was a "collector".

The Government's reliance on United States v. Martin (426 F.3d 68, 2d Cir. 2005) is misplaced, and in fact supports defendant's claim that no probable cause existed. In Martin, the Second Circuit held that mere membership in a child pornography e-group dedicated to child pornography could provide probable cause to search the member's residence for evidence of

child pornography, notwithstanding the lack of evidence that the member had used the website or participated in the e-group's email. In reaching its ruling, the Second Circuit determined that the "overriding, if not the sole, purpose of the [e-group] was illicit (to facilitate the receipt and distribution of child pornography); that an email address of an [e-group] member was linked to Martin's house; that collectors of child pornography overwhelmingly use the internet and computers to distribute and hoard this illegal pornographic material; and that, accordingly, there was a "fair probability" given the totality of the circumstances and common-sense, that evidence of a crime would be found at Martin's home because membership in the e-group reasonably implied use of the website". Martin at 74.

However, unlike the instant case, the affidavit in support of the Martin search warrant explicitly included an "extensive discussion, based upon the experiences of Special Agent Binney, of the way individuals who collect and produce child pornography use computers and the internet to access, acquire and disseminate this material. *It further detailed the characteristics of child pornography collectors, drawn from the extensive experience of a special agent in the FBI's Behavioral Analysis Unit*. This section emphasized that collectors tend to maintain their illicit collections and that they rarely, if ever, destroy them".  Martin at 72 (emphasis added).

In the Martin case, the affidavit included a detailed factual predicate by a behavioral analyst which the Court relied upon to determine that Martin was a "collector", including his membership in an e-group which existed solely to facilitate the sharing of child pornography amongst its members. In the instant case, no such analysis was included in the Fearon Affidavit. To the contrary, no evidence is included to sufficiently characterize "alertexchief" as a "collector"; thus, no reason existed to presume that child pornography was hoarded in the defendant's residence. As a consequence, the search warrant lacked probable cause.

B. The Affidavit in Support of the Warrant Was So Lacking In Probable Cause as to Render Reliance Upon It Unreasonable. Consequently, the Good Faith Exception Is Inapplicable to the Instant Case.

Evidence seized in a search illegal under the Constitution of the United States, conducted by a law-enforcement officer relying in objective good faith upon a judicial officer's issuing of a warrant, is not subject to the federal exclusionary rule. "[T]he marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." United States v. Leon, 468 U.S. 897, 922 (1984). The Supreme Court in Leon delineated four circumstances in which the exclusionary rule is still appropriate: (1) if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his disregard of the truth (2) the issuing magistrate wholly abandoned his judicial role (3) if the affidavit upon which the warrant was based was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) a warrant may be so facially deficient, e.g., in failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid. Id. at 923.

In those cases where the Government claims that the Leon good faith exception applies, the Government bears the burden of establishing the good faith exception to the federal exclusionary rule. Id. at 924. Law enforcement officers are charged with a reasonable knowledge of what the law prohibits. Id. at 919-920.

In the instant case, objectively reasonable reliance upon the warrant issued by the District Justice by the officers applying for and executing it was simply not possible. Simply stated, the Fearon Affidavit failed to include facts which constituted a substantial basis for concluding that

there was a fair probability that evidence of a crime could be found in the defendant's residence, and was so lacking in indicia of probable cause that official reliance on it was entirely unreasonable.

A close analysis of the Fearon Affidavit establishes that, while the affidavit at first glance appears to contain the details of a sophisticated investigation, the facts do not suggest that probable cause exists, or that a reasonable law enforcement, aware of what the law prohibits, could have objectively relied upon it.

Specifically, the Fearon Affidavit consists of nine (9) pages and eighteen (18) decretal paragraphs. Of those eighteen paragraphs, eleven (11) paragraphs are dedicated to establishing that the warrant application was not stale. (Fearon Affid. ¶¶ 8-18). Two paragraphs describe the process by which data is stored and accessed from a computer. (Fearon Affid. ¶¶ 6-7). One paragraph describes Investigator Fearon's computer training and background. (Fearon Affid. ¶1). One paragraph contains the boilerplate language that "collectors of child pornography maintain their collections over many years" (Fearon Affid. ¶2). Only three paragraphs address the facts necessary to establish probable cause – less than one page worth of written material – most of which contains a description of the defendant's residence. (Fearon Affid. ¶¶ 3-5).

When scrutinized closely, the Fearon Affidavit constitutes nothing more than a bare bones application for a search warrant which was so lacking in probable cause as to render reliance upon it by law enforcement officers unreasonable. Inasmuch as law enforcement officers are charged with reasonable knowledge of the law, reliance upon the warrant procured by such specious and questionable factual allegations was improper.

The Government argues that, because of the similarity between the factual assertions proffered in the <u>Martin</u> case and the instant case, a well trained officer would not have known

that the search was illegal. Such an argument is misplaced. Indeed, it is precisely because the Martin affidavit contained a detailed analysis which formed the basis for the affiant's belief that Martin was a "collector" of child pornography that a well trained officer should have known that the Fearon Affidavit was insufficient.

Because the reliance upon the search warrant was unreasonable, and because the affidavit lacked any indicia of probable cause, the good faith exception articulated in <u>United States v. Leon</u> is inapplicable. Consequently, the Court should not apply the Leon good faith exception in the instant matter, and the evidence should be suppressed.

## II.  DEFENDANT'S MOTION TO SUPPRESS STATEMENTS MADE TO LAW ENFORCEMENT OFFICERS ON SEPTEMBER 14, 2006 SHOULD BE GRANTED.

Defendant moves to suppress statements made by him to members of the New York State Police, who interrogated him while in the New York State Police barracks at Hawthorne, New York on September 14, 2006. The Government objects on two grounds: first, the Government notes that Defendant's motion was not accompanied by a sworn statement of fact which, if proven, would require the granting of the motion to suppress; second, the Government argues that the defendant would not be entitled to suppression of the statements made by him to law enforcement officials because he was not in custody, and not subject to custodial interrogation. (McQuaid Memorandum, p. 18-22). Notably, the Government does not allege that defendant was, in fact, advised of his <u>Miranda</u> rights at any time by any law enforcement official on September 14, 2006.

Annexed hereto and made a part hereof is the Affidavit of Defendant Anthony Rypka, which sets forth the factual basis upon which the statements attributed to him by members of law enforcement should be suppressed. Specifically, defendant attests to the following facts: On September 14, 2006, he arrived at his home in the morning to discover numerous New York State Troopers executing a search warrant at his home; he was separated from his wife and children; he was instructed to accompany the state police to the Hawthorne barracks for questioning; he was taken in a New York State Police unmarked radio car to the police barracks while accompanied by state police officers; he was taken to a secure area of the barracks; he was seated in an interrogation room in the company of a police investigator; he was not permitted to use a bathroom without an escort; he was questioned without the benefit of <u>Miranda</u> rights; he was confronted with images of child pornography and questioned about his familiarity with it; he was told he was not going anywhere until the forensics unit was finished going through his stuff; he was advised that he would not be released until he surrendered all of his weapons and firearms; and he was arrested, processed and transported to the Greenburgh Justice Court, where he was required to post Ten Thousand Dollars ($10,000.00) bail to secure his release.

Clearly, based upon the affidavit of the defendant annexed hereto, the test for custody applied by the Second Circuit has been met: "whether a reasonable person in defendant's position would have understood himself to be subjected to the restraints comparable to those associated with a formal arrest. <u>United States v. Ali</u>, 68 F.3d 148, 1472 (2d Cir. 1995); <u>United States v. Kirsteins</u>, 906 F.2f 919, 923 (2d Cir. 1990).

In the instant case, applying the standard of whether a reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest

(California v. Beheler, 463 U.S. 1121, 1125 (1983)) to the facts set forth in defendant's affidavit, it is apparent that he was in custody at the time when he was interrogated by law enforcement officials. Because the defendant was not advised of his Miranda rights prior to the custodial interrogation, the statements attributed to him by law enforcement officials are inadmissible at his criminal trial. Miranda v. Arizona, 384 U.S. 436 (1966); Colorado v. Spring, 479 U.S. 564 (1987).

**CONCLUSION**

Wherefore, your affirmant respectfully pray that Orders issue granting to Defendant Anthony Rypka, the relief sought within all instant motions; together with such other and further relief as to this Court seems just and proper.

Dated: March 18, 2008
     White Plains, New York

                                 Respectfully Submitted,


                                 _____/s/_____
                                 ANDREW C. QUINN, ESQ.


                                 _____/s/_____
                                 JOHN PATTEN, ESQ.

.

## **CERTIFICATION OF SERVICE**

ANDREW C. QUINN, ESQ., an attorney duly admitted to practice law before the Courts of the United States, Eastern District of New York, affirms the following under penalty of perjury:

That I am the attorney for Defendant ANTHONY RYPKA in the above-entitled action; that I am not a party to this action; and that on the 18th day of March, 2008, I served the annexed OMNIBUS MOTION, by ECF, to the following:

> U.S. ATTORNEYS' OFFICE, EDNY
> Attn.: Nicholas McQuaid, AUSA
> 300 Quarropas Street
> White Plains, New York 10601
> ***Courtesy Copy via First Class Mail***

Dated:      March 18, 2007
            White Plains, New York

                    _____/s/_____
                    ANDREW C. QUINN, ESQ.


                    _____/s/_____
                    JOHN PATTEN, ESQ.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

UNITED STATES OF AMERICA,


      -against-                           07 Cr. 0980 (CM)

ANTHONY RYPKA,

                      Defendant.
----------------------------------------------------------------x

**Anthony Rypka, being duly sworn, deposes and says:**

    1.      I am the defendant in the above captioned matter, and I submit this Affidavit in Support of my Motion to Suppress Statements allegedly made by me to members of the New York State Police Department on September 14, 2006.  This Affidavit is based on direct knowledge.

    2.      On September 14, 2006, I arrived at my residence located at 40 North Washington Street, Tarrytown, New York at approximately 10:45 AM.  At that time, I was in the presence of my wife and children.  Upon my arrival, I noticed several men in the driveway area of my residence.  As I approached, these men identified themselves as investigators in the New York State Police Department.  They instructed my wife and children to enter the kitchen and remain there, while three investigators escorted me to the side of my house.  I was presented with a copy of a search warrant and instructed to read it.  At the time, numerous other police officers were searching the entirety of my house.

    3.      As I was reading the search warrant, I was instructed by one of the investigators to tell my wife that I was going with the State Police to the State Police barracks located in Hawthorne, New York to answer questions.  At the time I was so instructed, I did not

believe that I had the option to decline and not go with them. This is based on the manner in which the instruction was given, the number of police officers present with me, and the number of officers searching my residence.

4.         I was transported to the State Police barracks in an unmarked police vehicle. I was not restrained in handcuffs. Upon our arrival at the barracks, we entered through a secure gate, and parked in the rear of the barracks. I was escorted by two officers to a secure door. We entered through the secure door, and I was escorted to an interrogation room. I was instructed to sit down.   I remained in the room for approximately twenty minutes before questioning began. At no time was I left alone in the room. To the contrary, a State Police investigator remained in my presence at all times.

5.         After approximately twenty minutes, a second investigator entered the room, showed me a series of photographs, and began questioning me. Given the manner in which the questions were asked, the presence of two investigators in the room, and the nature of the subject matter, I believed without question that I was not free to leave. After asking me a series of questions, the lead investigator left for few minutes to take a phone call. Upon his return, the lead investigator told me that I was not "going anywhere" until the Forensics Unit "went through all of your stuff." The investigators then began to ask additional questions of me regarding my use of my home computer and my alleged knowledge of illegal images of child pornography.

6.         At one point during the questioning, I asked to use the bathroom. I was told that I was permitted to go, but that I would need to be escorted to the men's room. I was then escorted to the men's room, where an investigator remained outside of the door until I exited, at which time I was escorted back to the interrogation room.

7.        After being questioned, I was told that I was being placed under arrest. I was advised that I would not be released unless and until I surrendered all of my weapons and firearms. Once I arranged to surrender my weapons, I was fingerprinted, photographed and transported to the Greenburgh Justice Court, where I was required to post Fifteen Thousand Dollars bail to secure my release.

8.        At no time during this questioning at the police barracks was I advised of my <u>Miranda</u> warnings.  At no time did I volunteer any information to the investigators.  All answers I provided were in direct response to questions asked of me while I was in the interrogation room at the State Police barracks in the company of at least two State Police investigators.

9.        The information contained herein is true and accurate to the best of my ability to recall.  I am aware that the Court will rely on the statements contained herein.

_____/s/_____<br>Anthony Rypka

Sworn to before me this 18th
day of March, 2008

_____

Notary Public